UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GARY FLYNN,

       Plaintiff,

v.                             Case No.: 8:11-cv-2054-T-33AEP

POLK COUNTY, MICHAEL PATRICK
THOUROT, and SHERRI DEVRIES
THOUROT,

       Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Polk County's Motion for Summary Judgment (Doc. # 50), filed on December 10, 2012. Plaintiff Gary Flynn filed a response in opposition (Doc. # 52) on December 21, 2012. For the reasons that follow, the Motion is denied.

**I.   Background**

On October 3, 2009, Flynn visited a gun range, the Saddle Creek Park Gun Range, which is "maintained and cared for" by Polk County. (Doc. # 47 at ¶¶ 11, 13). Defendants Michael Thourot and Sherri Thourot also visited the gun range on October 3, 2009, carrying, among other guns, a Jennings 9 mm firearm, which they had never previously shot. (Michael Thourot Dep. Doc. # 51 at 6, 9). Upon entry into the facility, the range master asked the Thourots to place their

weapons on a table for inspection, "picked every one of them up, made sure they were empty, gave them a quick visual once-over, set them all back on the table" and then directed the Thourots to a stall.  Id. at 6-7.

After shooting a full round with the Jennings 9 mm firearm without incident, Mr. Thourot reloaded the gun's clip, using pliers to squeeze the "ears" at the top of the clip so that "the bullets fit better," reloaded the clip into the gun, and placed the gun on a nearby table. Id. at 10.  The gun then suddenly started misfiring bullets on its own, spinning "like a . . . pinwheel on the table." Id. at 18. Both of the Thourots and Flynn were shot. Id. at 11-13.  Flynn was shot through the throat and the shoulder, causing him "severe and permanent injuries." (Doc. # 47 at ¶ 14).

Flynn filed his complaint on September 9, 2011, naming Polk County, the Thourots, and several fictitious parties as Defendants.  (Doc. # 1).  In the complaint, Flynn alleged counts for negligence (Count I) and negligent supervision (Count II) against Polk County and alleged a separate count for negligence against the Thourots (Count III).  Id. Following their failure to respond to the complaint, the Clerk entered a default against Michael and Sherri Thourot on April 17, 2012.  (Doc. ## 20-21).

On April 20, 2012, the Court granted Polk County's motion to dismiss Count I as barred by sovereign immunity, based on Flynn's withdrawal of the Count. (Doc. # 22 at 4).  The Court also dismissed most of the fictitious defendants from the case. Id. at 4-5.  However, the Court declined to dismiss Count II of the complaint. Id. at 8-9.

Upon Flynn's agreed motion, on December 3, 2012, the Court granted Flynn leave to file an amended complaint to add the name of the non-party range master to several of the complaint's allegations. (Doc. # 46).  Flynn filed his amended complaint on December 5, 2012. (Doc. # 47).  After Flynn failed to respond to Polk County's motion to strike certain portions of the amended complaint, the Court entered an Order on January 4, 2013, granting the motion as unopposed and striking Flynn's prayer for joint and several liability, his claim for attorney's fees, and his reference to the remaining fictitious defendants.  (Doc. # 53).

Polk County's motion for summary judgment as to Flynn's negligent supervision claim and Flynn's response thereto are now before the Court.  (Doc. # 50).

## II.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for

-4-

trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995)(citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)).

## III. **<u>Analysis</u>**

The elements of a negligent supervision claim under Florida law are: "(1) the existence of a relationship giving rise to a legal duty to supervise; (2) the negligent breach of that duty; and (3) that the negligence was the proximate cause of plaintiff's injury." <u>Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.</u>, 657 F. Supp. 2d 1279, 1291 (M.D. Fla. 2009)(citing <u>Collins v. Sch. Bd. of Broward Cnty.</u>, 471 So. 2d 560, 563 (Fla. 4th DCA 1985)).

Although Polk County acknowledges that it owed Flynn a duty of care to operate the gun range safely, Polk County argues that it is entitled to summary judgment because its duty did not include a standard of care broad enough for Flynn to recover under.  Polk County also argues that even if it breached any duty owed to Flynn, such breach was not the proximate cause of Flynn's injury.

### A.   <u>Duty</u>

"In negligence law, the concept of 'duty' has two components: (1) the relationship that justifies placing a requirement of care upon the defendant, and (2) the general standard of care that defines the risks to be foreseen by the defendant and the level of care to be imposed upon the defendant." <u>Monroe v. Sarasota Cnty. Sch. Bd.</u>, 746 So.2d 530, 534 n.6 (Fla. 2d DCA 1999)(citations omitted).

Under Florida law, once a governmental entity decides to operate a recreational facility, "it assumes the common law duty to operate the facility safely, just as a private individual is obligated under like circumstances." <u>Avallone v. Bd. of Cnty. Comm'rs of Citrus Cnty.</u>, 493 So. 2d 1002, 1005 (Fla. 1986).  Polk County acknowledges that this duty exists, such that the first component of the duty element is satisfied.  Polk County's arguments, thus, are targeted toward

the second component -- the scope and fulfillment of the standard of care required to satisfy its duty to operate the gun range safely. Specifically, Polk County argues that it fulfilled its duty to operate the gun range safely by providing "rules to keep the range safe and orderly," providing "a range master to ensure that those rules were followed by all patrons," by "post[ing] safety rules and also verbally inform[ing] each patron of those rules," and by having a range master on duty when the incident occurred. (Doc. # 50 at 4).

Polk County contends that no reasonable person could find that it owed any broader standard of care under which Flynn could recover. Specifically, Polk County argues that it had no notice or knowledge of any propensity for Jennings 9 mm handguns to spontaneously discharge bullets and did not have any knowledge of any similar prior incidents with such guns. Thus, argues Polk County, it could not have reasonably foreseen or forestalled the Thourot's Jennings 9 mm firearm from malfunctioning as it did, such that Polk County had no duty to prevent such injuries. Further, Polk County contends that it never undertook -- and never represented to patrons that it had undertaken -- the duty to inspect and ensure the safety of every gun brought to the gun range. Thus, Polk

County requests the Court to determine as a matter of law that the standard of care it owed to Flynn was not broad enough to encompass any duty that would allow recovery for Flynn's injuries.

However, the Court determines that in this case, the standard of care Polk County owed is a question for the jury and cannot properly be determined by the Court on summary judgment.  Indeed, under Florida law, "[w]hen [a] governmental subdivision sponsors or schedules an unusually dangerous activity at a park . . . , the standard of care required of a governmental subdivision may create a jury question." Dennis v. City of Tampa, 581 So. 2d 1345, 1349 (Fla. 2d DCA 1991). As explained in Dennis, "the specific standard of care owing under a duty typically involves a factual question which must be submitted to a jury." Id. at 1350.  However, "a trial judge is authorized to determine the standard of care as a matter of law under *undisputed* facts in those *rare* cases in which the movant carries its heavy burden of proof and convinces the judge that no reasonable jury could decide in favor of the plaintiff on the disputed standard of care." (Emphasis added).  Additionally, "there are limited occasions when strong factors of public policy permit a trial judge to determine the specific standard of care under *undisputed*

-8-

facts." <u>Id.</u> (emphasis added).

The Court finds that neither of these situations is present here. First, the facts in this case are not undisputed. Despite Polk County's assertion that it had no prior knowledge of the malfunctioning propensities of Jennings 9 mm handguns, Flynn has supplied the testimony of Michael Thourot, in which Mr. Thourot states that immediately following the incident, the range master asked him, "Was it the Jennings?" (Michael Thourot Dep. Doc. # 51 at 12).   After responding affirmatively, the range master stated, "I could have told you not to shoot that thing.   Those things are notorious for that." <u>Id.</u>   Thus, this testimony raises a question of fact as to whether or not it was foreseeable from Polk County's perspective that a Jennings 9 mm handgun could cause such an incident, such that a jury could reasonably impose a duty on Polk County to prohibit Jennings 9 mm handguns, or any other guns that are "notorious" for misfiring, from being used in the facility.

On this issue, Polk County argues that "it would be impossible for Polk County to ensure the safety of every gun. Even if the range master thoroughly handled and inspected each gun that came onto the range, there would be no way to account for latent modifications or user manipulation." (Doc. # 50 at

-9-

8)(citing Callender Aff. Doc. # 50-1 at ¶ 6).  The Court acknowledges that perfection of conduct is not humanly possible and that the law does not expect or exact an unreasonable amount of care from anyone.  However, short of requiring Polk County to ensure the complete safety of every gun brought into the range including those with unknown user modifications, as explained above, a jury could reasonably find that Polk County should at least be required to inspect and prohibit guns it knows have a propensity to malfunction and misfire even without any user modifications.  Such a duty, if found by the jury to be owed under the instant facts, could potentially allow Flynn to recover in this case, such that summary judgment is not warranted here.

Furthermore, the Court can imagine any number of other duties a jury could reasonably impose on Polk County which could possibly afford recovery to Flynn in this case, such as requiring and ensuring that patrons empty all bullets from their firearms prior to placing them down on range tables. Again, the determination of the necessary standard of care, including the extent, if any, to which Polk County was required to ensure the safety of any or all firearms used by patrons of its gun range, falls within the province of the jury, not the Court.

-10-

Polk County further argues that it "did not have the duty to make sure that the firearms used by patrons were of a certain quality because Polk County did not hold itself out as an inspector and insurer of the safety of every gun on the range. . . . Thus, it owed no duty to Plaintiff to ensure that the Thourots' firearm would not spontaneously discharge." (Doc. # 50 at 7).  The Court finds this logic circular and the argument unavailing.  While it is true that courts may impose duties on defendants where the defendants held themselves out to others as undertaking such duties, the inverse, which Polk County advocates, does not necessarily hold.  In other words, Polk County is not relieved of a potential duty merely because it never held itself out to the public as undertaking such duty.  Rather, it is a question for the jury to decide as to what actions Polk County should have taken in order to fulfill its duty to operate the gun range safely, including whether or not Polk County should have undertaken to prohibit the use of certain guns such as those that were known to be "notorious" for misfirings.

**B.   <u>Proximate Cause</u>**

Finally, Polk County argues that even if it breached a duty to Flynn, any such breach was not the proximate cause of his injury such that summary judgment is appropriate.

-11-

However, under Florida law, causation "is generally an issue for the trier of fact unless reasonable persons could not differ in that respect. If there is any doubt at all concerning proximate cause, that doubt should be left to a jury." <u>Saullo v. Douglas</u>, 957 So. 2d 80, 89 (Fla. 5th DCA 2007). Further, "the question of foreseeability as it relates to proximate causation generally must be left to the fact-finder to resolve. Thus, where reasonable persons could differ as to whether the facts establish proximate causation - i.e., whether the specific injury was genuinely foreseeable or merely an improbable freak - then the resolution of the issue must be left to the fact-finder." <u>Whitt v. Silverman</u>, 788 So. 2d 210, 217 (Fla. 2001). As currently framed, the facts of this case present an issue of causation about which reasonable minds could differ, and, thus, the issue is not appropriate for disposition upon summary judgment.

Accordingly, it is

**ORDERED, ADJUDGED** and **DECREED**:

Defendant Polk County's Motion for Summary Judgment (Doc. # 50) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>27th</u> day of February, 2013.

-12-

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

-13-